UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 06-185-01 (PJS/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Rosbel Lopez, | |
| Defendant. | |

Clifford Wardlaw, Assistant United States Attorney, for the Government.
Thomas Dunnwald, for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 30, 2006, on Defendant's Motion to suppress fruits of search and seizure [#53]. At the hearing, the Court received testimony from Special Agent Eric Smith of the Drug Enforcement Administration. Neither party submitted any exhibits during the course of the hearing. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendant's Motion to suppress fruits of search and seizure [#53] be denied.

## I. FINDINGS OF FACT

Special Agent Eric Smith (hereinafter "Agent Smith") of the Drug Enforcement Administration (hereinafter "DEA") testified at the hearing on this matter. Agent Smith testified that Defendant Rosbel Lopez was also known as Alfredo Araiza Morales. Agent Smith testified that, in May 2006, the DEA received information from a Confidential Informant (hereinafter "CI"). Agent Smith testified that the CI was someone that he was unfamiliar with before the initiation of this investigation. The CI was recently released from jail and the CI informed the DEA that he met

Tapia Meraz while in jail. The CI informed the DEA that Tapia Meraz offered to provide the CI with a contact to purchase methamphetamine. The CI informed the DEA that, shortly after he was released from jail, the CI received an unsolicited telephone call from Defendant. Agent Smith testified that the CI received a monetary benefit for cooperating with the DEA. Agent Smith testified that he confirmed that the CI was recently incarcerated with Tapia Meraz.

Agent Smith testified that, after the CI informed the DEA that Defendant contacted him, Agent Smith instructed the CI to arrange a meeting with Defendant to see what Defendant had to offer in terms of narcotics sales. On May 16, 2006, the CI met with Defendant and another individual in a public parking lot in Minneapolis to discuss further purchases of methamphetamine. At this meeting the CI was given a sample of the methamphetamine that was for sale and this sample tested positive. Agent Smith testified that he and other agents were at the scene during this meeting, that the CI was wired and that audio recordings were made of this meeting. On May 22, 2006, the CI and Defendant spoke by telephone and arranged to meet at the Rainbow Foods grocery store on West Lake Street in Minneapolis. Within two to three hours of this telephone call Defendant arrived in Minneapolis and met the CI at the Rainbow parking lot where he sold the CI one-half pound of methamphetamine. The CI turned over the methamphetamine to DEA agents immediately after the controlled buy occurred. Agent Smith testified that he and other agents were present at the scene during the controlled buy and that the CI was wired during the controlled buy. Agent Smith testified that an audio recording was made of the events that transpired between Defendant and the CI during the controlled buy on May 16, 2006.

After the successful purchase of methamphetamine on May 22, 2006, Defendant and the CI conversed several times via telephone and negotiated the purchase of two pounds of

methamphetamine. On June 6, 2006, Defendant and the CI arranged another meeting at the Rainbow Foods parking lot in Minneapolis for the sale of two pounds of methamphetamine. After the meeting was arranged, the Willmar Police Department located Defendant and followed him as he made his way through western Minnesota in a roundabout route to Minneapolis. On his way to Minneapolis Defendant met up with his co-defendant, who was driving a tan Chevy Blazer. Both vehicles were followed by police; however, police subsequently lost sight of the tan Chevy Blazer.

As soon as Defendant arrived in Minneapolis he met again with his co-defendant in the tan Chevy Blazer. After this meeting Defendant and the co-defendant proceeded to the parking lot of Rainbow Foods separately. Defendant then contacted the CI and told the CI to meet with his co-defendant in the tan Blazer. The CI refused and told Defendant that he wanted to meet with Defendant to consummate the deal. Shortly thereafter Defendant called the CI back and told the CI that there were too many people in the Rainbow Foods parking lot and Defendant told the CI to meet him at the Kmart parking lot on West Lake Street in Minneapolis. After Defendant placed this call he and his co-defendant followed each other to the Kmart parking lot. There were a total of five individuals in the two vehicles. Once the two vehicles reached the Kmart parking lot Defendant moved from his vehicle into the tan Chevy Blazer and all the other individuals in the two vehicles entered the Kmart store. Defendant then called the CI and told the CI to meet him in the tan Blazer in the Kmart parking lot.

The CI arrived at the Kmart parking lot and sat in the Blazer with Defendant. Agent Smith testified that the plan was to arrest Defendant once the CI saw that the methamphetamine was present in the vehicle. Agent Smith testified that the CI got out of the tan Chevy Blazer, sat in the CI's vehicle, and called Agent Smith to inform Agent Smith that the methamphetamine was located

in the tan Chevy Blazer. Agent Smith testified that, upon learning this information, he called other officers on the scene and they arrested Defendant in the tan Chevy Blazer. Inside the console the DEA agents discovered two pounds of methamphetamine. Agents also seized the cell phone used by Defendant to arrange the methamphetamine deals with the CI.

## II.  CONCLUSIONS OF LAW

Defendant now moves to suppress the evidence seized by the DEA agents when he was arrested without a warrant. In order to establish probable cause to effectuate a warrantless arrest, "the facts and circumstances within the officers' knowledge must be sufficient to justify a reasonably prudent person's belief that the suspect has committed or is committing an offense." United States v. Roberson, 439 F.3d 934, 939 (8th Cir.2006). When "reviewing the . . . officers' determination of probable cause, [the Court] look[s] at the totality of the circumstances and give[s] due weight to the inferences that can be drawn from the officers' experience." Id. Probable cause is "based on the collective knowledge of all the officers involved." United States v. Briley, 726 F.2d 1301, 1305-06 (8th Cir.1984).

In the present case, the facts and circumstances in the officers' collective knowledge were sufficient to justify a reasonably prudent person's belief that Defendant had committed the crime of an illegal sale of narcotics because Defendant sold the CI one-half pound of methamphetamine on May 22, 2006. Therefore, the DEA Agents had probable cause to arrest Defendant in the Kmart parking lot on June 6, 2006.

The Fourth Amendment prohibits law enforcement officers from conducting a search unless the search is permitted by a search warrant, issued by a neutral judicial officer. However, there are exceptions to the warrant requirement, and one such exception relates to a search incident to a lawful

arrest. In Chimel v. California, the Supreme Court held that "[t]here is ample justification . . . for a search of the arrestee's person and the area 'within his immediate control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. 792, 763 (1969). In order to effectuate a lawful search incident to arrest, the search must be confined to the area of the arrestee's immediate control and the search must be "contemporaneous" with the arrest. United States v. Morales, 923 F.2d 621, 627 (8th Cir.1991).

In the present case, the search of the tan Chevy Blazer was a valid warrantless search incident to Defendant's valid arrest. Defendant was arrested while he was inside the tan Chevy Blazer and, as noted above, that arrest was valid because it was based on probable cause to believe that Defendant previously sold one-half pound of methamphetamine to the CI. Once a valid arrest was effectuated, the DEA agents were permitted to search the area within Defendant's immediate control. As Defendant was arrested inside of the tan Chevy Blazer, the console of the Blazer and the passenger compartment of the Blazer were within his immediate control. The search of the tan Chevy Blazer was conducted contemporaneous with Defendant's arrest. As such, the search of the tan Chevy Blazer was a valid search incident to arrest, and the Court recommends that Defendant's Motion to suppress fruits of search and seizure [#53] be denied

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to suppress fruits of search and seizure [#53] be **DENIED**.


DATED: September 11, 2006                               s/ *Franklin L. Noel*
                                                        FRANKLIN L. NOEL

United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 28, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **September 28, 2006** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.